```
             IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF OREGON
```

**EMILIO J. BLEA,**

                                             Civil No. 07-1540-BR

    **Petitioner,**

                                             OPINION AND ORDER

    v.

**MARK NOOTH,**

    **Respondent.**

    **KATHLEEN M. CORRELL**
    4300 NE Fremont Street
    Suite 230
    Portland, OR  97213

        Attorney for Petitioner

    **JOHN R. KROGER**
    Attorney General
    **LESTER R. HUNTSINGER**
    Senior Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, OR  97301

        Attorneys for Respondent

**BROWN, Judge.**

    Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the Court **DENIES** the Petition for Writ of Habeas Corpus.

1 - OPINION AND ORDER -

## BACKGROUND

On March 11, 2002, Petitioner and his wife went to a gift shop operated by Lorina Kyle in Umatilla County. They intended to steal money that Ms. Kyle was known to keep in her handbag. When they arrived, however, other customers were present in the store, so Petitioner and his wife left without stealing anything. After they went home, Petitioner told his wife he was going out to buy some heroin.

Petitioner went back to the gift shop armed with a metal ratchet handle. Petitioner tried to steal Ms. Kyle's handbag. When Ms. Kyle tried to stop him, Petitioner beat her over the head with the ratchet handle until she stopped resisting. Petitioner took the handbag, which contained about $1,900 in cash. Ms. Kyle later died from the injuries inflicted by Petitioner.

Petitioner returned home about one hour later with $300 worth of heroin and a large sum of cash. After Petitioner and his wife paid their landlord and a cell phone bill, they left for Kennewick, Washington, where his wife had family. Petitioner and his wife spent the next two nights in a motel in Kennewick and used heroin there. Petitioner told his wife he had robbed the gift shop.

Upon their return home, Petitioner's wife saw a newspaper account of the incident and asked Petitioner what happened. He told his wife he beat Ms. Kyle over the head and hoped she died.

2 - OPINION AND ORDER -

He also told her he threw the empty handbag and his blood-covered clothes in the Columbia River.

Petitioner and his wife were arrested on drug charges. While in custody, Petitioner told his cell-mate that he and his wife murdered the gift shop owner for money. Petitioner also told his girlfriend that he beat the shop owner over the head with a bat, causing severe head injuries.

On January 29, 2003, a Umatilla County grand jury indicted Petitioner on two counts of Aggravated Murder, one count of Murder, one count of Robbery in the First Degree, and one count of Assault in the First Degree. On August 25, 2003, Petitioner signed a Petition to Enter Plea of Guilty to one count of Aggravated Murder and one count of Robbery in the First Degree. On August 27, 2003, the trial judge accepted Petitioner's guilty plea, dismissed the remaining charges, and entered a stipulated "true life" sentence.

Petitioner did not directly appeal. Petitioner did seek state post-conviction relief ("PCR"). Following an evidentiary hearing, the state PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Blea v. Hill*, 214 Or. App. 171, 163 P.3d 614, *rev. denied*, 343 Or. 223, 168 P.3d 1154 (2007).

3 - OPINION AND ORDER -

On October 15, 2007, Petitioner filed his habeas corpus Petition in this Court. Petitioner alleges three claims for relief:

> **Ground One:** Petitioner was denied both the effective assistance and adequate advocacy of counsel in violation of the Sixth and Fourteenth Amendment to the U.S. Constitution.
> **Supporting Facts:** Counsel failed to investigate the facts surrounding the case; did not file motions that should have been filed; did not communicate with petitioner or act as an advocate. Petitioner was mis-informed about the law and said attorney failed to advise petitioner; did not seek negotiations with the State and failed to give petitioner sufficient facts in which to make an informed decision. This was a capitol [sic] murder case that required a certain degree of expertise and professionalism that was not displayed by said attorney.
>
> **Ground Two:** Petitioner was not adequately advised of the law behind his plea of guilty and was not knowingly, intelligently and freely entered in violation of the 5th, 6th, & 14th.
> **Supporting Facts:** Petitioner was told that if he did not plea guilty he would be given the death penalty. The attorney failed to advise petitioner that no one had ever received the death penalty in Umatilla County and said attorney knew that petitioner had never admitted to and in fact denied a key element of the crime to wit: that he intentionally committed the crime of homicide. In fact at no time, including entering in said plea did petitioner admit to committing a murder.
>
> **Ground Three:** Petitioner was denied all due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.
> **Supporting Facts:** Petitioner did not inform the intent to commit the crime of murder. Petitioner attempted to explain this lack of intent to his attorney; petitioner believed that said attorney would investigate and represent him to all extent necessary; instead said attorney did not discuss any possible defenses; denied petitioner any validity in his comments; did not object

4 - OPINION AND ORDER -

>  to hearsay and barred testimony from petitioner's wife and basically deceived and coerced petitioner in waiving his right to trial by jury and hence the due process of law that a jury trial encompasses.  Petitioner's attorney failed to advise petitioner that the state's case mainly depended on invalid marital testimony and testimony from questionable witnesses who themselves were drug addicts and criminals.

In his Memorandum of Law Supporting Petition for Writ of Habeas Corpus ("Supporting Memorandum"), Petitioner addresses only his claim that trial counsel was constitutionally ineffective because he failed to explain to Petitioner the difference between Aggravated and Felony Murder under Oregon law and thereby failed to ensure that Petitioner's guilty plea was constitutionally knowing and voluntary.

Respondent argues Petitioner waived the claims alleged in the Petition but not addressed in the Memorandum in Support and in any event, Petitioner is not entitled to habeas corpus relief on those claims.  Respondent also argues the state PCR court's decision denying relief on the one claim addressed in Petitioner's Supporting Memorandum is entitled to deference and, therefore, Petitioner is not entitled to habeas corpus relief in this Court.

## DISCUSSION

**I.  Relief on the Merits**

   **A. Legal Standards**

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may

5 - OPINION AND ORDER -

not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's determination of a factual issue "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence. *Id*.

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002)). When the state court does not issue an opinion or otherwise supply the reasoning for a decision, federal habeas review is not *de novo*. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Instead, this court considers whether the state decision was "objectively reasonable" after conducting an independent review of the record. *Id*.

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance

6 - OPINION AND ORDER -

of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

When a petitioner has pleaded guilty or no contest on the advice of counsel, the "voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The prejudice prong, in turn, requires the petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id*. at 59; *Lambert v. Blodgett*, 393 F.3d 943, 980 (9th Cir. 2004). In order to establish

7 - OPINION AND ORDER -

prejudice under *Hill*, the strength of the prosecution's case should be considered as circumstantial evidence as to whether a petitioner actually would have gone to trial had he received adequate advice from counsel. *Miller v. Champion*, 262 F.3d 1066, 1068 & 1074-75 (10th Cir. 2001); *see also Brown v. Hill*, 2007 WL 464712 *5 (D. Or., Feb. 7, 2007) ("the strength of the prosecution's case is an indicator of whether the defendant would have accepted a guilty plea offer even if counsel's advice had not been constitutionally deficient"), *aff'd* 267 Fed. Appx. 630 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 97 (2008).

**B.    Analysis**

Petitioner argues trial counsel was constitutionally ineffective for failing to explain the difference between Felony and Aggravated Murder and allowing Petitioner to plead guilty to Aggravated Murder.  According to Petitioner, he only admitted to a Felony Murder, to which he had a defense.  He is entitled, he contends, to have the case returned to the Umatilla County court so he may assert his felony murder defense or for further plea negotiations.

Under Oregon law, Felony Murder "is a form of murder that is committed during the course of certain enumerated crimes, including burglary and robbery." *State v. Ventris*, 337 Or. 283, 292, 96 P.3d 815 (2004).  Felony Murder occurs when a person, in

8 - OPINION AND ORDER -

the course of committing Robbery in the First Degree, or the immediate flight therefrom, "causes the death other than one of the participants." Or. Rev. Stat. § 163.115(1)(b). The sentence for Felony Murder is a 25-year term of incarceration and lifetime post-prison supervision.

Aggravated Murder, on the other hand, includes a Felony Murder that is committed "personally and intentionally." Or. Rev. Stat. § 163.095. As such, Felony Murder is a lesser-included offense of Aggravated Murder. *Ventris*, 337 Or. At 294. The sentencing options for Aggravated Murder are "death, life imprisonment without the possibility of parole or life imprisonment" with a 30-year minimum sentence. Or. Rev. Stat. § 163.105(1)(a) and (c).

The Aggravated Murder charge to which Petitioner ultimately pleaded guilty was described in the Indictment as follows:

> COUNT 1
>
> The defendant, on or about 03/11/02, in the County of Umatilla and State of Oregon, did unlawfully and knowingly commit the crime of Robbery in the First Degree, and in the course of, and in the furtherance of the crime that defendant was committing, defendant personally and *intentionally* caused the death of Lorina Kyle, a human being who was not a participant in the crime.

Resp. Exh. 102, p. 1 (emphasis added).

The Petition to Enter Plea of Guilty signed by Petitioner specifically referenced the charges outlined in the Indictment and

9 - OPINION AND ORDER -

stated in more than one place that Petitioner understood those charges and agreed to plead guilty to them. The Petition stated, in pertinent part, as follows:

* * *

> 3.  I wish to plead GUILTY to the charge(s) of Count I, Aggravated Murder (ORS 163.095; 115); Count IV, Robbery in the First Degree (ORS 164.415).
>
> 4.  I told my attorneys all the facts and circumstances known to me about the charge(s) against me. I believe that my attorneys are fully informed on all such matters. My attorneys have counseled me and advised me on the nature of each charge; on any and all lesser included charge(s); and on all possible defenses that I might have in this case.
>
> * * *
>
> 15. I believe that my attorneys have done all that anyone could do to counsel and assist me. I AM SATISFIED WITH THE ADVICE AND HELP THEY HAVE GIVEN ME: I recognize that if I have been told by my attorneys that I might receive probation or a light sentence, this is merely their predictions and is not binding on the Court.
>
> * * *
>
> 17. I plead "GUILTY" and request the Court to accept my plead [sic] of "GUILTY" and to have entered my plea at "GUILTY" for the following reason(s):  I committed the crimes described in Counts I and IV of the Indictment and as set forth in my Statement of Facts which is attached to this Plea Agreement.
>
> 18. I OFFER MY PLEA OF "GUILTY" FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE INDICTMENT AND IN THIS PETITION AND IN THE CERTIFICATE OF MY ATTORNEY WHICH FOLLOWS.

Resp. Exh. 103, pp. 1-3 (emphasis in original).

10 - OPINION AND ORDER -

Also contained in the Plea Petition was a Certificate of Counsel signed by Petitioner's attorney, which contained the following statements:

> CERTIFICATE OF COUNSEL
>
> The undersigned, as attorney(s) and Counselor(s) for the above defendant, hereby certifies:
>
> 1.  I have read and fully explained to the defendant the allegations contained in the Indictment in this case.
>
> 2.  The defendant does read and understand the English language. This Petition was read to him by his attorney and all details explained and questions answered.
>
> 3.  I have explained the minimum penalty for each Count to the defendant, and consider him competent to understand the charges against him and the effect of his petition to enter a plea of guilty.
>
> 4.  The plea of "GUILTY" offered by the defendant in Paragraph 7 accords with my understanding of the fact he related to me and is consistent with my advice to the defendant.
>
> 5.  In my opinion the plea of "GUILTY" as offered by the defendant in paragraph 7 of the petition is voluntarily and understandingly made. I recommend that the Court accept the plea of "GUILTY."

Resp. Exh. 103, p. 3 (emphasis in original).

At Petitioner's change of plea hearing, the trial judge engaged Petitioner in an extraordinarily comprehensive colloquy. The trial judge took great pains to ensure Petitioner understood the nature of the charges against him and the consequences of pleading guilty. Although the entire exchange is too lengthy to repeat verbatim here, the Court notes the following reflects the

11 - OPINION AND ORDER -

colloquy between the Court and Petitioner after a lengthy statement from Petitioner's attorney regarding the plea negotiations:

> THE COURT:   . . . You heard the statements of your attorney, Mr. Hackler. Do you agree with them, sir?
>
> PETITIONER:   Yes, sir.
>
> THE COURT:   Have you had enough time to talk to Mr. Hackler?
>
> PETITIONER:   Yes, sir.
>
> THE COURT:   Do you think your attorney, Mr. Hackler, has done a good job for you?
>
> PETITIONER:   Yes, I do.
>
> THE COURT:   Is there anything you wanted him to do that he didn't do with respect to the job a lawyer would do for you?
>
> PETITIONER:   No.
>
> THE COURT:   No one has made you any promises other than the plea negotiations Mr. Hackler and I both stated. Is that correct?
>
> PETITIONER:   Yes.
>
> THE COURT:   And this states that you committed the crimes and the indictment states as follows: That the defendant on or about 3/11/02 in the County of Umatilla and State of Oregon did unlawfully and knowingly commit the crime of Robbery in the 1st Degree and in the course of it and in the furtherance of the crime the defendant was committing, defendant personally and intentionally caused the death of Lorina Kyle, a human being, who was not a participant in the crime. Is that what you did, sir?

12 - OPINION AND ORDER -

PETITIONER:   Yes.

THE COURT:    And further it states that on or about 3/11/02 in Count 4 in the County of Umatilla in the State of Oregon you unlawfully and knowingly caused upon Lorina Kyle by striking her and did use a dangerous weapon, to wit, a clubbing device, while in the course of committing theft of property, to wit, money, with the intent of preventing resistance and with the intent of overcoming resistance the said defendant's taking of the said property. Is that what you did?

PETITIONER:   Yes.

THE COURT:    Now in your stipulation of facts, it states in paragraph 1: On or about March 11, 2002, in the town of Power City, Umatilla County, Oregon, I (that's you ...) entered Kyle's Gift Store with the intent of robbing Lorina Kyle. Is that true?

PETITIONER:   Yes.

THE COURT:    It states in paragraph 2 that: At the time and place described above, I (that you again) was armed with a tool called a ratchet handle. Is that correct?

PETITIONER:   Yes.

THE COURT:    Paragraph 3 states: Upon coming into contact with Lorina Kyle inside Kyle's Gift Store, I (again, that's you) attempted to take a bag which I believed contained U.S. currency. Lorina Kyle confronted me and an altercation occurred. I hit Lorina Kyle in the head with the ratchet handle more than once until I overcame her resistance. I took the bag which contained about $1,700. Is that true?

13 - OPINION AND ORDER -

PETITIONER:    Yes.

Resp. Exh. 104, pp. 11-12.

In the state PCR proceeding, Petitioner alleged counsel was constitutionally ineffective because, *inter alia*, he failed to explain to Petitioner the elements that constituted Aggravated Murder and failed to advise Petitioner of all possible defenses. He also alleged counsel failed to inform Petitioner that he did not commit the crime of Aggravated Murder "inasmuch as there was no intent" and for failing to "prove that the alleged crime was an accident."   Resp. Exh. 105, pp. 4, 7.   In his deposition testimony, Petitioner said he did not understand the elements of the charge of Aggravated Murder.  He explained what happened on the day of the crime as follows:

>    Q.   So why do you think — I don't know anything about your case at this point, so why do you think – what do you think your defense would have been?
>
>    A.   We could have – they could have investigated and see if I – I would have – I'm not – I'm not a doctor, I went into a store, the store clerk is at the back of the store, I grabbed a bag and I turned and I started leaving.  At that point I didn't think I was – anybody saw me.
>
>    As I was leaving, the store clerk started yelling and running towards me.  I then turned around and said, "Get back, back to the back of the store, get down and just stay there."
>
>    Okay, when that happened I didn't see if the store clerk got all the way down, I was just trying to get out of there.  As soon as the store clerk – it looked like the store clerk was going down I turned around and started to leave.  That's when the store

>            clerk jumped up, started yelling and started
>            hitting me, I panicked and hit the store clerk.
>
> Q.    Okay
>
> A.    When the store clerk fell, I left the store clerk
>       alone. I knew - I knew the store clerk wasn't
>       dead, I mean, once the store clerk went down I just
>       turned around and left.
>
> * * *
>
> A.    . . . So, and like I was telling you, when I was
>       in the store and once the person went down I didn't
>       - I mean, the person - I know they weren't dead, so
>       how can I intentionally kill somebody if I know
>       they're still alive and I leave? I mean, I just
>       think that the store clerk's knocked out, I don't
>       keep beating on 'em.
>
> * * *
>
> Q.    . . . Now, did you tell [your attorney] that you
>       never intended to kill the clerk?
>
> A.    No, I never went in there threatening anybody,
>       brandishing a weapon, nothing.
>
> Q.    I mean, did you -
>
> A.    I wish I would have because that way I think the
>       clerk would have been at least scared and just did
>       what I asked the clerk to do, which was just to get
>       down and stay there.
>
> Q.    Right.
>
> A.    I turned to leave, the clerk - I didn't see if the
>       clerk went all the way down. I turned around to
>       leave, when the clerk started yelling and hitting
>       me I panicked and hit the clerk. But once the
>       clerk went down I knew the clerk wasn't dead. I
>       just left the clerk alone and left.

Resp. Exh. 116, pp. 19-20, 23, 30.

15 - OPINION AND ORDER -

The state submitted an Affidavit to the PCR court from Petitioner's attorney which stated, in pertinent part:

3. It was petitioner's decision, and his decision alone, to plead in this case.

4. Petitioner was well aware of the ramifications of pleading. Petitioner was well aware of the sentence that would be imposed pursuant to his plea. Petitioner understood the plea agreement and was never coerced into pleading. Petitioner's plea was knowing, voluntary and intelligent.

* * *

7. Petitioner was well-informed of all of the elements the State would have to prove to convict him of Aggravated Murder, if he proceeded to trial. I went through his Constitutional Rights with him several times.

8. Petitioner was advised of any and all possible defenses, however unlikely. But given the nature of petitioner's crime, and the evidence against him, petitioner's conviction was inevitable.

* * *

12. The State was not open to a 30-year prison sentence. Petitioner had to accept life without parole, or risk being sentenced to death. As indicated, the imposition of the death penalty was likely, had petitioner proceeded to trial.

13. Petitioner's deposition testimony greatly minimizes his crime. The State's evidence was strong that petitioner committed Aggravated Murder. Petitioner's intent was clear, and the crime was not an accident. No only did petitioner plan the robbery, but he struck the victim in the head numerous times with a blunt object. The victim's fingers were smashed and broken from her attempt to fend off petitioner's brutal attack.

16 - OPINION AND ORDER -

Resp. Exh. 118, pp. 3-5. The state also submitted an affidavit from the prosecutor stating the case against Petitioner was "extremely strong" and that he made it clear he would accept no sentence "less than life without parole." Resp. Exh. 116, p.1. "Had [Petitioner] proceeded to trial," the prosecutor continued, "I feel confident that I would have obtained a sentence of death." *Id*. The prosecutor concluded that if Petitioner's case returned to Umatilla County, "I will seek, and I will in all likelihood obtain, a sentence of death in this case." *Id*.

The PCR trial judge rejected Petitioner's argument. At the conclusion of the evidentiary hearing, the judge stated "Petitioner has failed to establish the allegation of the petition." Resp. Exh. 119, p. 10.

Upon conducting an independent review of the record, this Court agrees that the state PCR decision denying relief was not objectively unreasonable. Both trial counsel and the trial judge went to great lengths to establish Petitioner's understanding of the plea agreement. Despite his self-serving statements to the contrary, Petitioner simply has not established that he was unaware of the elements of Aggravated Murder before entering his guilty plea. As such, Petitioner's trial attorney did provide constitutionally effective assistance of counsel and Petitioner is not entitled to habeas corpus relief in this Court.

**II. Unaddressed Claims**

Respondent argues Petitioner cannot obtain relief on the claims not addressed in his Memorandum in Support because he thereby waived those claims. The Court, however, does not agree that counsel's failure to address all of the claims alleged in the original, *pro se* Petition automatically results in a waiver.

District Judge Marsh of this court addressed this issue in *Elkins v. Belleque*, CV 06-1180-MA:

> Respondent relies upon 28 U.S.C. § 2248 which provides that the allegations of a return to a habeas petition, or an answer to an order to show cause, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."
>
> However, the Advisory Committee Notes to Rule 5 of the Rules Governing Section 2254 Proceedings, provides that a traverse is no longer contemplated "except under special circumstances", and that the common law assumption of verity of the allegations of a return until impeached, as codified in 28 U.S.C. § 2248, is no longer applicable." Advisory Committee Note to Rule 5, 28 foll. § 2254 (1976) (citing *Stewart v. Overholser*, 186 F.2d 339, 343 n. 5 (D.C. Cir. 1950)). In light of the foregoing, and in the absence of any case law supporting respondent's position that the failure to furnish legal argument in support of habeas claims renders the claims abandoned, I decline to find the claims not traversed to be waived or subject to denial on that basis alone."

Opinion and Order (#35) at 5-6.

Judge Marsh's reasoning is persuasive and, consequently, this Court rejects Respondent's assertion that Petitioner has waived the grounds for relief not specifically addressed in his

18 - OPINION AND ORDER -

Memorandum in Support. However, having undertaken a review of the those claims, the Court concludes habeas corpus relief is not warranted. Some of the claims are procedurally defaulted because Petitioner did not include them in his appeal from the denial of PCR relief. Because Petitioner provides no evidence of cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default, federal habeas corpus relief may not be granted on the procedurally defaulted claims. As to the remaining, exhausted claims, the PCR court's decision denying relief on them was not objectively unreasonable and Petitioner is not entitled to relief in this Court.

## CONCLUSION

For these reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus and **DISMISSES** this action.

**IT IS FURTHER ORDERED** that, should Petitioner appeal, the Court **DENIES** a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 18th day of December, 2009.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

19 - OPINION AND ORDER -

20 - OPINION AND ORDER -